UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

    FRANK TAYLOR,                                   Case No.: 10-58887-wsd
                                                                       Chapter 7
          Debtor.                                      Hon. Walter Shapero
_____/

    GEORGE P. DAKMAK, TRUSTEE

          Plaintiff,

v.                                                                              Adv. Proc. No.: 11-05043

    NORMAN GORNBEIN JEWELRY
    & LOAN, INC., A MICHIGAN
    PROFIT CORPORATION,

          Defendant.
_____/

## **OPINION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The Debtors' Chapter 7 case was commenced on June 9, 2010. Between July 2009 and April 2010, the Debtor had pawned a number of items with the Defendant in three separate transactions. On each occasion, the Debtor received and the Defendant paid the Debtor amounts which, it is alleged, were very much less than what the Trustee alleges was or is the market value of the pawned items. The Debtor did not timely redeem any of the items following which the Defendant allegedly sold one item, possibly melted down a gold item, and perhaps remains in possession of the remaining items. The Trustee commenced this action under 11 U.S.C. § 548 on a fraudulent conveyance theory seeking return of any unsold items or recovery of the value of the other item(s).

1

It is not challenged that the Defendant is at least a duly licensed pawnbroker under MCL 446.201-219, the state law regarding pawnbrokers and any applicable local (City of Southfield) ordinance. The Defendant has moved for Summary Judgment.

A necessary element of proof under 11 U.S.C. § 548(a)(1)(B)(ii) is that the Debtor have "received less than a reasonably equivalent value in exchange for such transfer or obligation."

One of the Defendant's arguments is that whatever the Defendant pawnbroker received or has, or disposed of as a result of its otherwise lawful possession and disposition and/or retention of the pawned property, as a matter of law (and irrespective of the extent of any material gap between the value of the item and the amount given out by the pawnbroker for it) must be presumed as being not less than "reasonably equivalent value" for what the Debtor received in the pawn transaction. If that were so, then the Trustee would be unable to prove that important and necessary element of his fraudulent conveyance cause of action and the summary judgment motion should be granted.

Defendant's argument is largely based on *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d (1994). That was a real estate mortgage foreclosure case concluding that the price obtained at a regularly conducted non-collusive foreclosure sale as a matter of law was "reasonably equivalent value" for purposes of § 548 fraudulent conveyance analysis. The Defendant analogizes it to a regularly conducted pawn transaction, whereas the Trustee says that as regards to disposition of pawned property, there is none of the notice, auction, bidding, time lines, etc., and other aspects of the foreclosure process, which afforded the rationale for the Court's conclusion in the *BFP* case.

The case of *Carter v. H & B Jewelry & Loan*, 209 B.R. 732 (Bankr. D. Or. 1997) is also apropos here. There, in a Chapter 13 setting, the debtor sought to set aside a jewelry pawn

2

transaction as a fraudulent transfer; the debtor having failed to redeem or buy back the items or excercise any rights given her under applicable Oregon pawn law, prior to filing her bankruptcy petition. What was before the Oregon Bankruptcy Court was a motion for summary judgment brought by the pawnbroker defendant arguing that the forfeiture of the pawned property was "reasonably equivalent value" as a matter of law. That Court denied the motion in what this Court believes is a well-reasoned opinion, differentiating the *BFP* and other cases on various grounds. It is an opinion with which this Court agrees. (It is to be noted the Oregon Court in that case later concluded at trial based on the specific facts that the debtor in fact did receive reasonably equivalent value). In that same case, that Judge also referred to another Oregon case decided by another Oregon Bankruptcy Judge involving a land contract transaction, which if agreed with, might portend a different result. *See In re Carter*, 212 B.R. 972 (Bankr. D. Or. 1997).

Defendant's next argument is that in any event the existence and intent of the state and possibly local laws governing pawnbrokers are of such a broad and encompassing nature that they should be construed as preempting the field, thereby rendering such things as fraudulent conveyance law inapplicable to, and in irreconcilable with, any and all otherwise legitimate pawn transactions. There has yet to be developed the appropriate place, interplay, and interaction between what one might think as the usual pawn transaction on the one hand and bankruptcy, non-bankruptcy commercial, and regulatory law on the other. There are not fully resolved questions such as whether a pawn is or should be considered a secured transaction also governed in some respects by a particular state's version of the Uniform Commercial Code - the answer to which might well affect whether or to what extent a pawn is subject to fraudulent conveyance attack. Michigan has a state law, cited by Movant, relating to pawnbrokers and pawn transactions. *See* primarily MCL 446.201-

3

219. (The City of Southfield may also have a relevant ordinance; if so, it has not been presented to the Court.) The state law essentially requires licensor by local government units of pawnbrokers who must provide a surety bond to that governmental unit. Under MCL 446.20e(e), a "pawnbroker" is defined as one who "deals in the purchasing of personal property or other valuable thing on condition(s)[sic] of selling the same back again at a stipulated price." Under MCL 446.205 and, 206, there are imposed detailed record keeping and maintanence requirements for pawn transactions subject to inspection by appropriate officials, as well as periodic reporting requirements to local officials. Under MCL 446.208, there are requirements of delivery of a memorandum of the pawn or pledge transaction encompassing the information required to be maintained by the pawn brokers, to the person doing the pawning or pledging, and, that provision puts a three percent limit per month plus storage charges, on what can be charged the "borrower" or "pawner" for the "loan", which if exceeded, precludes collection of any and all such charges, and mandates surrender of the item involved. MCL 446.209 sets limits on interest, storage and uasage fees. Other provisions deal with vesting of title to a pawner items after a certain time, and revestment of title and possession upon repayment prior to sale, prohibitions against melting, defacement, separation or breaking into parts, or destruction of the pawned article, or accepting a pawn of certain articles bearing a manufacturer's serial number and the like, and penalties for violation, etc. While the law does indicate when a pawnbroker may dispose of the object of the pawn, that particular law does not deal with or impose any particular process or guidelines as to any prior notice of, or the manner of disposition or what happens to the proceeds of the sale; though one would assume in a true pawn transaction and irrespective of the amount of the "loan," the pawnbroker keeps the entire proceeds of any disposition and also suffers the loss if the proceeds are less than the given consideration. It may also be the case

4

that the pawner has no legal obligation to repay the "loan." Rather, he only has an option to repay if he wants return of the pawned item.

There is also the statute itself and the argument made in some pawn or pledge cases that the pawned property (and/or any cause of action seeking its return) is not property of the estate under § 541(b)(8). On its face the language of that section would seem to be directed to, or describes, pledge or pawn transactions in specific situations which might be applicable here. While the Defendant has not yet, at least, made that argument here, it is relevant to take note of the first words to that section which say "subject to subchapter III of chapter 5". Section 548, under which this proceeding is brought, is part of the said subchapter III, chapter 5. From that reference, one could argue that not only is the pawned property (and related cause of action) property of the estate, but the statute could be construed as specifically affirming the availability of fraudulent conveyance actions involving described or pledge pawn transactions, which may not involve or be property of the estate.

The Defendant also argues on a policy level that it is engaged in an historic, well-known, and highly regulated business, and to make transactions which otherwise conform to the applicable rules and customs of such would be disruptive to such enterprises and undermine the integrity of normal and otherwise legitimate pawn transactions. That argument also smacks of some sort of preemption argument, the aspects of which, if pursued, involve a much deeper and penetrating analysis that is presented at this stage by the Motion for Summary Judgment. Carried to the extreme, the Defendant's argument would foreclose fraudulent conveyances actions in much of the regulated commercial world. Arguably it should take clearer legislative intent than is evident so far to attain such a result in this case.

Finally, it is to be further noted that in this case there were three separate pawn transactions over a period of seven to ten months which should be considered separately and might very well lead to different results; yet another reason for requiring a full evidentiary hearing on all issues.

Accordingly, the Motion for Summary Judgment is **DENIED**, but without prejudice. An order is being entered to that effect.

**Signed on July 13, 2012**

                                                **/s/ Walter Shapero**
                                                **Walter Shapero**
                                                **United States Bankruptcy Judge**